JOHN PICKERING *vs.* JOHN DEMERRITT.

The order of a customer to a broker to buy stock " on a sixty days' buyer's option " does not authorize the broker to buy the stock himself and hold it on his customer's account for sixty days.

An allegation in a declaration, that the defendant employed the plaintiff to buy for him certain stock to be delivered to him in sixty days from the time of the purchase does not import an order of the defendant to the plaintiff to buy the stock " on a sixty days' buyer's option."

CONTRACT alleging " that the defendant, by his agent, William H. Greely, retained and employed the plaintiff to buy for him, the said defendant, one hundred shares of the stock of the Huron Mining Company, the same to be delivered and transferred to the defendant in sixty days from the time of said pur

chase, and promised the plaintiff to pay him such moneys as he should pay for the stock, and also a commission " specified; that the plaintiff bought the shares accordingly, gave notice of the purchase to the defendant, and at the end of the sixty days offered to transfer and deliver the shares to the defendant, who refused to receive them or to pay the plaintiff for them, or his commission, but afterwards made a partial payment to the plaintiff; and that the defendant owed the plaintiff the balance. The declaration also contained general counts, for the price of one hundred shares of stock of the Huron Mining Company, bargained and sold by the plaintiff to the defendant; for money paid by the plaintiff for the defendant; and on an account annexed; all the counts being for the same cause of action. The answer denied all the plaintiff's allegations; alleged that any sum owed by the defendant to the plaintiff had been fully paid; and set up the statute of frauds.

At the trial in the superior court, before *Reed,* J., the plaintiff introduced evidence tending to show " that in February 1867 the defendant employed Greely as his agent to buy for him one hundred shares of the stock of the Huron Mining Company on a sixty days' buyer's option; that Greely gave the order to the plaintiff, who was a stock broker and member of the brokers board in Boston; and that the plaintiff afterwards, on the same day, for the purpose of fulfilling this order, at the regular meeting of the board, bought from Hubbard & Co., stock brokers, who were also members thereof, one hundred shares of said stock for cash, at thirty-six dollars per share, and immediately thereafter sold to himself the same stock at thirty-seven dollars per share, sixty days' buyer's option; that these two transactions were recorded by the secretary of the board, at the times thereof, on the record of purchases and sales at the board, kept by him as secretary, the one immediately following the other on the record, said record being in writing and being signed by the secretary at the close of each day's transactions; that, soon after the close of the session of the board on that day, the plaintiff reported to Greely that he had filled his order at the price of thirty-seven dollars per share; and Greely expressed himself sat-

isfied therewith; that Greely, either at the time of giving the
order, or at the time of this report to him by the plaintiff, told
the plaintiff that he (Greely) was acting for the defendant; and
that the market value of a sixty days' buyer's option on a sale
of Huron Mining Company stock, at the time of the transac-
tions in question, was from seventy-five cents to a dollar and a
half per share more than the cash price of the stock, varying
within those limits according to the parties."

The plaintiff's evidence tended further to show that, about a
week after these transactions, " the stock having depreciated in
value in the market, the plaintiff, through Greely, applied to the
defendant for a deposit, advance, or margin, on account thereof,
which the defendant declined to make, saying, in so declining,
that he would ' take care of the stock at its maturity;' that near
the end of the sixty days the plaintiff gave notice to the defend-
ant of the time when said period would expire, and requested
him then to take up and pay for the shares, and such request
was also duly made at the expiration of said sixty days; but
that the defendant declined then to take the shares or to pay for
them, as requested, but turned over to the plaintiff certain claims
against other persons, and certain shares of other mining stock,
to be applied towards payment for the hundred shares in ques-
tion, out of which claims and stock so turned over the plaintiff
realized the amount credited in the account annexed to his dec-
laration.     There was no evidence that at the time when the de-
fendant turned over to the plaintiff the claims and other mining
stock, he had any knowledge of the manner aforedescribed of
the purchase of said hundred shares of stock."

The plaintiff offered to show "a custom of the brokers of
Boston, on receiving an order like the one in this case, to fill it
by buying of themselves as in this case;" but the judge ruled
that such evidence was incompetent; and also ruled " that
the memorandum in writing of the transactions in question,
made by the secretary of the brokers' board, at the times thereof,
and signed by him at the end of the day's transactions of the
board, was not sufficient to take the contract out of the statute
of frauds; that the plaintiff, on an order to buy on a sixty days'

buyer's option, could not buy for cash and receive the stock, so as to change the legal obligation of the person giving the order to take the stock ; that a broker receiving such an order could not lawfully buy of himself; that a part payment, as in this case, would not operate as a ratification and take the contract out of the statute if the defendant was ignorant of the foregoing facts of the manner of the purchase; and that on the evidence the plaintiff could not maintain his action." Under these rulings, a verdict was taken for the defendant, and the case reported for the revision of this court.

*S. Bartlett & A. G. Browne, Jr., ( W. E. Parmenter* with them,) for the plaintiff. The judge ruled, in effect, that the plaintiff " could not buy for cash, and receive the stock." To determine the correctness of the ruling, the first step is to ascertain what the defendant authorized the plaintiff to do : whether merely to make a contract with some person for a hundred shares of stock, to be taken and paid for by the defendant at such time within sixty days as he might elect; or to purchase and pay for a hundred shares of stock, himself, and hold, or, in the phrase of the market, " carry " it, to be taken and paid for by the defendant at such time within sixty days as he might elect. The declaration alleges that the authority was to purchase and carry ; not merely to contract with some other person for a future transfer. If the proofs support the declaration, then the judge's ruling was wrong. If they leave the question in doubt, then the case should have been sent to the jury.

Which was authorized by the defendant would seem clear from the conduct of both parties. The plaintiff bought, paid for, and carried the stock. He did not contract to purchase. He applied to the defendant for a margin, to be advanced to himself, not to any third party with whom he had contracted. The defendant thus knew that the plaintiff had purchased and paid for the stock and was carrying it himself, and made no suggestion then, nor at any other time, that the authority he had given was merely to contract with others. After the expiration of the sixty days, the defendant transferred to the plaintiff certain things, to be applied towards payment for the shares so

held by the plaintiff; thus recognizing the fact that he was the debtor of the plaintiff, and not of any third person.

If the authority was to purchase and hold, and not merely to contract, then the words "on a sixty days' buyer's option" must import that the defendant was to pay to the plaintiff, in addition to the sum expended by the plaintiff in the purchase, the market value of said option; and the case shows that the market value of such an option is a separate and well known subject of sale and negotiation in stock transactions. In order to fix such market value, the plaintiff went through the process of offering the shares at sixty days' option at the brokers' board. This mode of fixing the value of the option must rest on usage, which the plaintiff offered to show. One employing a broker notoriously a member of the brokers' board, impliedly empowers him to deal according to the usage of the board, whether the employer knows such usage or not. *Mitchell* v. *Newhall*, 15 M. & W. 308. *Bayliffe* v. *Butterworth*, 1 Exch. 425. *Sutton* v. *Tatham*, 10 Ad. & El. 27. *Pollock* v. *Stables*, 12 Q. B. 765. *Horton* v. *Morgan*, 19 N. Y. 170. Whether such usage be sustained or not, the plaintiff has a right to recover such market value of the option as he can, and in fact did, prove. At all events, if the authority under which the plaintiff acted was to purchase, and not merely to contract to purchase, the plaintiff is entitled to recover the sum expended by him in purchasing, and his commission; even if it did not include an agreement on the part of the defendant o pay the plaintiff for the option.

That the authority of the defendant to Greely embraced the power of substitution, and that the plaintiff was duly substituted, is established by the subsequent negotiations between the plaintiff and the defendant.

Finally, the usage offered to be shown by the plaintiff was not merely one by which the price of a buyer's option on stock is fixed by a quotation at the brokers' board. That was but a small part of it. The substance of the usage which he offere to show was, that, when a broker in Boston is employed to buy stocks on time, he may make himself personally responsible for the price, and "carry," himself, the stock so purchased. Even

if that part of the usage by which the quotation at the board fixes the price of "carrying" the stock should fail to be approved, the rest remains a good and reasonable usage.  *Cropper* v. *Cook*, Law Rep. 3 C. P. 194.  *Chapman* v. *Shepherd*, Law Rep. 2 C. P. 228.

*A. A. Ranney*, for the defendant.

FOSTER, J.   The final ruling of the judge who presided at the trial was, that upon the evidence the plaintiff could not maintain his action.

The declaration alleges that the defendant employed the plaintiff to purchase for him certain shares of stock, the same to be delivered to him in sixty days from the time of the purchase.  Assuming this to import, as the plaintiff claims, an order to buy the stock and carry it on the defendant's account for sixty days, we find no evidence of any such employment.  The evidence was merely of an order to buy the stock "on a sixty days' buyer's option," that is, with a right on the part of the purchaser to take and pay for it at any time within sixty days he might choose.  If the course pursued by the plaintiff amounted to a purchase and "carrying" of the stock, then it was an unauthorized proceeding; one which the order given to the plaintiff did not warrant him in pursuing.  If that course could be treated as the valid execution by a broker of an order to purchase on a sixty days' buyer's option, which was the only thing the defendant employed the plaintiff to do, then there is no such contract declared upon, and for this reason the action must fail.

It would be very difficult to support a usage by which a broker, employed to purchase stock, might, without the knowledge of his principal, buy the stock of himself.   But we do not find it necessary to enter upon this discussion in order to dispose of the present case.                        *Exceptions overruled.*