## AMERICAN LINSEED COMPANY, Respondent, v. EBERSON, Appellant.

**St. Louis Court of Appeals, June 25, 1907.**

(Opinion by Goode, J.)

1. **SALES: Time of Delivery: "During."** Where three contracts, each for the sale of a certain number of barrels of oil to be delivered at the option of the purchaser, provided that the delivery should be: In one contract "during the months of October, November and December," in another "during the period from Oct. 1, 1901, to June 30, 1902," and in the third "between" certain dates, the purpose in each contract was to give the purchaser the option regarding the time of delivery and to bind the seller at the purchaser's option to deliver whenever the latter should demand delivery of all or any part of the barrels of oil called for in each contract.

2. ———: ———: **Demand.** A demand at one time for delivery of all the oil covered by all three of such contracts was sufficient, and a failure to deliver the oil called for by one contract was a breach of such contract.

(Dissenting Opinion by Bland, P. J.)

3. ———: ———: **"During."** A contract for the sale of a certain number of barrels of oil to be delivered at the option of the purchaser "during the months of October, November and December contemplated delivery should be made in each month as ordered by the purchaser; otherwise the disjunctive "or" instead of the conjunctive "and" would be between the words "November" and "December."

4. ———: ———: ———. Where a contract for the sale of oil provided that the oil should be delivered at the option of the purchaser "during the period from October 1, 1901, to June 30, 1902," is uncertain, because "during" may mean "in the time of" or "through the continuation of." Therefore evidence of a course of dealing between the parties was admissible for the purpose of aiding the construction of the contract; in this case the evidence is examined and held to show that the contract should be construed to mean that the oil should be delivered through the period, in each month of the period.

5. ——: ——: "Between." A contract for the sale of a number of barrels of oil which provided that the oil should be delivered at the option of the purchaser "between October 1, 1901, and January 30, 1902," this meant that all or any part of the oil should be delivered on the demand of the purchaser at any time.

6. ——: ——: ——: Demand. But where the purchaser in such case demanded the delivery of all oil covered by the three contracts at the same time when he was entitled to a delivery only of the oil covered by one, this was not a sufficient demand to entitle him to recover damages for failure to deliver on demand.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale,* Judge.

REVERSED AND REMANDED.

*S. T. G. Smith* and *Thomas S. Meng* for appellant.

(1) The phrase delivery "at your option," addressed to the buyer, has a well understood meaning in commercial usage, to the effect that the buyer has a right to call for delivery at any time within the contract period. Webster's Dict., Option, 4; Kent v. Miltenberger, 13 Mo. App. 506; Williams v. Tiedeman, 6 Mo. App. 272; White v. Barber, 123 U. S. 419. (2) In contracts such as that of September 7, 1901, for delivery at buyer's option "between" certain dates, the buyer certainly has the right to call for delivery at any time between those dates. Snelling v. Hall, 107 Mass. 134.

*Klein & Hough* and *J. L. Hornsby* for respondent.

(1) The construction placed by the trial court on the contracts of May 28, 1901, and September 12, 1901, is correct, and consequently the instruction given by the court to the jury is correct. Archer v. Kelly, 29 L. J. Ch. 911; Regina v. Anderson, 9 Adolph. & Ellis 663; Bowes v. Shand, L. R., 2 App. 455; Glendale Woolen Co. v. Ins. Co., 21 Conn. 19; Riddell v. Harrell, 71 Cal. 254. (2) But if these two contracts, exhibits A and C, cannot fairly be construed, from the language therein respectively contained, as construed by the trial court,

and as contended for by respondent, then it must be that the language is so ambiguous as to permit the admission of parol evidence of the former course of dealings between the parties, their relations, etc., in order to arrive at the intention of the parties in making the contracts, not to vary, but to explain the contracts. Lumber Co. v. Warner, 93 Mo. 384; Ellis v. Harrison, 104 Mo. 270; Edwards v. Smith, 63 Mo. 119; Bird v. Beckwith, 60 N. Y. Supp. 1041; 2 Am. and Eng. Ency. Law (2 Ed.), p. 294.

GOODE, J.—This is an action for the balance due on the purchase price of linseed oil sold and delivered by plaintiff to defendant. The contract was for one thousand barrels of oil, of which it is alleged the defendant paid for nine hundred and twenty barrels and owes for the remaining eighty, the sum of $1,834.90. The first paragraph of the contract under which the oil in controversy was sold, will be quoted for the purpose of comparing it with the other contracts which are in controversy. Said paragraph reads as follows:

"St. Louis, Mo., Sept. 12, 1902.
"A. A. Eberson & Co.,
        City.

"Dear Sirs: This will confirm sale made you Sept. 12th of 1,000 barrels Linseed Oil for delivery during the period from November 1, 1902, to August 1, 1903, it being understood that you are to take not less than 75 barrels per month and not over 180 in any one month."

Following that paragraph are statements of the price of raw oil at the different dates between November 1, 1902, and August 1, 1903, and other paragraphs stating variations in the prices of boiled oil and bleached oil. Then follow these paragraphs:

"You have the option of taking such amounts as you desire in bulk, the price to be 2c per gal. less.

"Terms, 30 days net, or 1 per cent for cash paid within ten days of date of invoice."

Linseed Co. v. Eberson.

The petition is in the usual form for a balance due on merchandise sold and delivered. The answer is a general denial and three counterclaims for damages alleged to have been sustained by the defendants in consequence of plaintiff having refused to deliver to him the oil as called for in three distinct contracts of purchase, which are in no way connected with the contract on which plaintiff sues, they having been made in 1901 and prior to the date of the contract in suit. The first counterclaim is based on the following written contract:

"AMERICAN LINSEED COMPANY, ST. LOUIS.
C. W. *Blow*, *Manager*.

"St. Louis, Mo., 5-28-1901.

"Messrs. A. A. Eberson & Co.,
        City.

"Gentlemen: We beg to confirm sale made you yesterday of 300 bbls. of Linseed Oil at 44c basis Raw for each 7½ lbs.

"1c advance for Boiled and 3c for Bleached.

"Bulk shipments at 2c less.

"Terms 60 days from date of each invoice or 1 per cent for cash in 10 days.

"The oil to be taken by you at your option during the months of October, November and December, 1901.

"Thanking you and awaiting your counter-confirmation, beg to remain,

"Yours very truly,
        "C. W. BLOW, Mgr."

After pleading the substance of said contract, defendant alleges that on September 26, 1901, he notified and required plaintiff to deliver on the first day of October, 1901, the oil called for by the contract; that in response to this request, plaintiff delivered on said date, twenty barrels and no more; that on October 1, 2, 3, and 4, defendant made other demands for the delivery

of the oil, but plaintiff refused to comply and instead of delivering all of said oil as demanded, delivered it as follows: October 1, 1901, twenty barrels; October 2, 1901, seven barrels; October 3, 1901, eighteen barrels; October 4, 1901, five barrels; October 7, 1901, sixteen barrels; October 14, 1901, two barrels; October 15, 1901, two and one-half barrels; October 17, 1901, thirty-four barrels; October 22, 1901, sixty-five barrels; October 23, 1901, five barrels; October 25, 1901, five barrels; October 29, 1901, five barrels; November 4, 1901, fifteen barrels; November 5, 1901, one barrel; November 11, 1901, fifteen barrels; November 15, 1901, fifteen barrels; November 18, 1901, twenty barrels; November 21, 1901, seven barrels; December 20, 1901, three barrels; December 26, 1901, five barrels; January 3, 1902, 31½ barrels. It is further alleged that the market value of the oil on October 1, 1901, was sixty-five cents for each seven and one-half pounds, that is, one gallon, and that on the various days when the oil was delivered, the price had sunk to different sums each less than what oil was worth on October 1, in consequence of which the defendant suffered a loss of $1,612, for which he prays judgment.

The second counterclaim is based on the following contract:

"AMERICAN LINSEED COMPANY, ST. LOUIS.
    "C. W. Blow, Manager.
        "St. Louis, Mo., Sept. 7, 1901.

"A. A. Eberson & Co.,
        City.

"Gentlemen: We beg to acknowledge receipt of your esteemed order for 120 bbls. of Linseed Oil for delivery at your option between Oct. 1, 1901 and Jan. 30, 1902.

"Raw at .................40c for each 7½lbs.
"Boiled, at ...............41c for each 7½ lbs.
"Bleached, at .............44c for each 7½ lbs.

"Terms, 30 days or 1 per cent for cash in 10 days.

"Please issue counter-confirmation.

"We thank you for favoring us.

"Yours very truly,

"C. W. Blow, Mgr.

"Correct this, please, to read June 30th.

"The delivery on above is Oct. 1, 1901, to June 30, 1902.

"C. W. Blow, Mgr."

Defendant alleges that on September 26, 1901, he notified and requested plaintiff to deliver the oil called for by the contract last aforesaid, which defendant refused to do. Other demands for delivery of the oil are also averred, with the further averment that the demands were not complied with and that instead of compliance, plaintiff delivered sixty barrels of the oil on October 15, and sixty barrels on October 1 and the days of its delivery, plaintiff sustained a loss of $811.20 for which he prays judgment.

The third counterclaim is based on the following contract:

"AMERICAN LINSEED COMPANY, ST. LOUIS.

*C. W. Blow, Manager.*

"St. Louis, Mo., 9-12-1901.

"Messrs. A. A. Eberson & Co.,

City.

"Gentlemen: Beg to confirm sale made you on the 9th for 120 bbls. of Linseed Oil for delivery at your option during the period from October 1, 1901, to June 30, 1902, at 40c for each 7½ lbs. of Raw Oil; 41c for each 7½ lbs. of Boiled Oil; 44c for each 7½ lbs. Bleached Oil delivered.

"Terms, 30 days or 1 per cent for cash in 10 days from date of each invoice.

"Kindly favor us with your counter-confirmation by return mail and oblige,

"Yours very truly,

"C. W. Blow, Mgr."

It is alleged that on September 26, defendant requested the delivery of the oil called for by the last stated contract, and made subsequently other requests for its delivery, all of which plaintiff refused to comply with; that instead, he delivered sixty barrels of oil on October 16 and sixty on October 17; that in consequence of the lower price of oil on those dates, as compared with its price on October 1, the defendant sustained a loss of $811.20, for which he prays judgment.

A replication was filed in which the allegations of the three counter claims are denied, and it is also further alleged that defendant is not entitled to recover on the counterclaims because plaintiff was not bound to deliver all the oil mentioned under the contracts at any one time or on any of the days on which defendant alleges he demanded delivery. It is further averred in the reply that plaintiff delivered all the oil mentioned in the counter claims and defendant received and accepted the same as performance of the terms of the several contracts, paid the purchase price of the oil, and that by an agreement and understanding between plaintiff and defendant, the latter waived any right "he may have had for the delivery of all of said oil at any one time, or at any time prior to the actual delivery thereof." The several contracts on which the counter claims are based were introduced in evidence, with testimony to prove defendant demanded delivery of all the oil called for by the three contracts (540 barrels) October 1, 1901. This demand was in writing and dated September 26. There were also subsequent oral demands. Plaintiff's manager in St. Louis refused to make delivery on October 1, contending that defendant was not entitled to full delivery of the oil called for by any one

contract on a single day; but on the contrary, that plaintiff was entitled to make delivery from time to time during the period mentioned in each contract. The evidence also showed that instead of making the deliveries as contemplated by defendant, the plaintiff delivered on the days and in the quantities stated in the answer. Defendant protested against this mode of delivery and asserted that he was entitled to delivery of all the oil called for by each of the contracts entered into in 1901, on October 1, in accordance with his demand, and that he would hold plaintiff liable for the loss sustained in consequence of its refusal thus to deliver. On October 1, 1901, linseed oil was worth sixty-five cents per gallon; that is, for seven and one-half pounds; and hence, if defendant had received, on that date, all the oil called for by his purchases, he would have made a profit of twenty-one cents a gallon by reselling it. There is evi· dence tending to show linseed oil was scarce on October 1, 1901, in St. Louis and hardly obtainable; but evidence, too, that plaintiff had enough on hands to fill its contracts with the defendant, but was distributing it over the United States to other dealers with whom it had contracts. The contention between the parties was as to the construction of the contracts declared on in the counter claims; that is to say, whether they gave defendant the right to call for all the oil on a certain day, or only to call for it at intervals throughout the period mentioned in the respective contracts. The defendant insisted he had the right to call for all of it on any day he chose; whereas plaintiff insisted he had no such right, but was bound to take it in installments, in reasonable quantities, and at intervals. The trial court adopted plaintiff's theory as to the first and third contracts; that is to say, those shown in exhibits A and C, and defendant's theory as to the second contract, shown in exhibit B. The different interpretations given to the contracts were due to the fact that in the

126 App—28

first memorandum, it appeared the oil was to be taken
at defendant's option "during" a certain period, to-wit:
during the months of October, November and December,
1901; and in the third contract "during the period from
October 1, 1901, to June 30, 1902;" whereas in the sec-
ond contract, the oil was to be delivered at defendant's
option "between October 1 and June 30, 1902." The
court held further, that the evidence did not show any
separate demand had been made by defendant for the
delivery of the oil purchased under the second contract,
as he only demanded delivery on October 1, 1901, of the
entire five hundred and forty barrels covered by the
three contracts. Hence the court ruled that plaintiff
had not breached either of the three contracts and de-
fendant was entitled to no damages on his counterclaims.
The jury was instructed to return a verdict for plaintiff
for the amount sued for and against the defendant on
each of the counter claims, and a verdict and judgment
having been given in accordance with this instruction,
defendant appealed. In order to arrive at a correct
interpretation of the three contracts sued on by the de-
fendant, the court admitted evidence over defendant's
objection as to the previous course of dealing between
the parties. To the admission of this evidence, the
defendant saved an exception. The evidence showed
defendant conducted a paint factory in the city of St.
Louis and, in addition to that business, sold at whole-
sale, linseed oil and turpentine and other painting ma-
terials. He had been purchasing linseed oil from the
plaintiff for from three to five years and the business
done during that time amounted to between one hun-
dred and two hundred thousand dollars. Sometimes
defendant gave an order for as much as one thousand
barrels of linseed oil. Occasionally, instead of deliver-
ing directly to defendant, plaintiff would deliver the
oil defendant had bought, to customers of defendant to
whom he had made sales. Hence the plaintiff knew

defendant was buying oil to sell as well as for use in his factory, and so the court found. This being true, whenever he could sell at a profit, he would be likely to ask for a delivery of the oil purchased by any particular contract giving him an option as to deliveries. It also appeared in evidence that under previous contracts, plaintiff had made deliveries pursuant to requests of defendant, for as much as seventy or eighty barrels at a time and had always filled defendant's orders for deliveries; but it did not appear that he had ever ordered all the oil due under one agreement to be delivered at one time. One of the previous contracts introduced in evidence, of date November 3, 1899, was for one thousand barrels of oil. Some five hundred barrels of that oil had not been taken by defendant at the expiration of the time for delivery, and he was forced by plaintiff to accept the five hundred barrels at the end of the delivery period, although the price of oil had declined in the meantime and in consequence, defendant suffered a heavy loss. This happened on some other occasions. The three salient facts which stand out from the oral testimony regarding the previous course of dealing between the parties are, that defendant had never before called for the entire quantity of oil at one time bought under any contract; that plaintiff had always filled his orders, and no dispute had arisen between them as to the quantity he was entitled to order, and that sometimes the quantity he might order for any one delivery was expressly stipulated. This was done in the contract of November 3, 1899, which prescribed that the minimum quantity defendant might order delivered was ninety barrels a month; and it will be observed that the contract on which plaintiff sues in the present case, fixes the minimum delivery at seventy-five barrels per month and the maximum at one hundred and eighty barrels. It should be stated that the previous contracts were not produced and hence their exact terms cannot be known.

Besides the oil purchased under written contracts, it was further shown defendant purchased oil from plaintiff in the open market.

An exception was taken by defendant to the admission of evidence regarding the previous course of delivery of oil, but we do not perceive that the evidence established a course of dealing inconsistent with his contention regarding the meaning of the contracts on which the counterclaims are based. In fact, it rather favors his contention, in showing that in some instances, when it was desired to limit his option as to when he would take oil under a given contract, the limitation was expressly stipulated by the parties. This fact encourages the view that when nothing was said about a minimum or maximum quantity to be ordered by defendant, his option to take the oil throughout a specified period was unrestricted and he might take it in any quantity and at any time he desired. But leaving out of view the extraneous evidence, we think that is the true interpretation of the contract before us. Much importance was attached to the use of the word "during" in the first and third contracts; the idea being that the word prevented the defendant from ordering all the oil called for by the purchase in either of the three months specified in the first memorandum or at any one time in the period from October 1, 1901, to June 30, 1902, specified in the third memorandum. The utter indefiniteness of such a requirement is apparent at a glance. It amounts to this; that defendant might order any number of barrels less than the whole amount during a month but could not order it all. The trial court said:

"They could not force you to take it all at one time except on the last day when the contract expires. You didn't need to order any in October; that was your option, under that contract. You didn't need to order any until the last day of November. That was your option;

but you could not call for it all during one month. Only
on one day out of the entire period would they have a
right to force you to take all the oil. Out of the balance
of the entire period you had the option to call for the
oil during the months as specified in the contract."

It is obvious that this interpretation of the contract
is vague to the last degree. But it is contended the
defendant might order only reasonable quantities dur-
ing the three months, distributing the entire order over
them. Such a view is inconsistent with the language
used and simply fixes the rights of the parties by a new
contract instead of the one they made. Moreover, the
third contract, which is admitted to stand on the same
footing as the first, does not specify the months, but
says: "during the period from October 1, 1901, to June
30, 1902." Hence the reasoning on which the lower
court concluded there was to be a distribution of. the
oil throughout the months, is not applicable to the third
contract. In all three of the writings the words "at
your option" are employed, and those are the decisive
words in ascertaining the intention of the parties;
although the first and third contracts provided for deliv-
ery at his option "during" specified periods and the
second one, for delivery at his option "between" speci-
fied dates. But there is not the least ground for believ-
ing the parties meant to provide differently in their
different contracts, or used the word "during" to ex-
press an intention regarding the delivery of the oil in
the writings wherein that word appears, different from
their intention regarding delivery under the contract
in which the word "between" occurs. Indeed, it is not
contended there was a different intention. The
purpose, in every instance, was to give defendant an
option regarding the delivery of the oil, and to bind
plaintiff to deliver at his option. Now if we attend
to the testimony, it is apparent that instead of the oil
being delivered at the defendant's option, it was, in fact,

delivered at the plaintiff's and against defendant's express wish. He was granted no right whatever in the matter except to take the oil in installments which suited the plaintiff, and this was treated by the lower court as a compliance with the first and third contracts. We have no doubt the purpose of the parties was as stated.

Plaintiff may not have expected all the oil to be called for at one time, but nevertheless the contracts gave defendant the right to call for it at his pleasure within a specified period; to call for any quantity or all at once. To hold otherwise would be to disregard the option feature of the contract, which was an integral part of it and a stipulation in defendant's favor. It is true the word "during" has one meaning which is not inconsistent with the idea of continuous delivery throughout a given period, but it has another meaning compatible with total delivery on any date within the period. It is defined as follows: "In or within the time of; at some period in; or throughout the course, action existence or continuance of; as 'it happened during the war;' 'it continued during the night.' [Standard Dictionary.] A fair interpretation of the instruments in suit shows that whether there should be a continuous delivery or a total delivery at one time, was made dependent on the will of the defendant. [Johnston v. Trippe, 33 Fed. 530; Posey v. Scales, 55 Ind. 282; Dodge v. Kiene, 28 Neb. 216; Cleveland v. Sterrett, 70 Pa. St. 204; Pickering v. Demerritt, 100 Mass. 416; Levy v. Rothe, 17 N. Y. Misc. 402.] But it is said the memoranda provide for payment within sixty days "from date of each invoice," thereby showing several deliveries were contemplated. These words merely show it was contemplated that several deliveries might occur; not that they necessarily would occur. In other words, it was meant that the defendant might demand the oil in different invoices or might not. The very essence

of the contracts was deliveries at his option; that is, at such times and in such quantities as he chose to call for the oil. If we say plaintiff was only bound to make deliveries in reasonable quantities at different times, then defendant had no option, but was controlled by what, under the law, would be reasonable conduct in respect of deliveries. On the other hand, if we say, as the lower court did, that he might call for any quantity less than the whole in a certain month, we manifestly create a contract the parties never had in mind and one with a limitation useful to neither party. We think it is apparent that the stipulation for deliveries at defendant's option, gave him the right to call for the whole or any part of the oil mentioned in the contracts when he chose, within the dates named.

Neither do we accede to the view that no demand was made for the delivery of the oil called for by the second contract. On September 26, defendant demanded delivery of the entire five hundred and forty barrels of oil, for which he had contracts. This covered the oil due under the second contract as well as the others, and if the plaintiff was bound to deliver all the oil called for in said second contract on demand, it was sufficiently notified that defendant asked for delivery. The judgment is reversed and the cause remanded. *Nortoni, J.,* concurs. *Bland, P. J.,* dissents.

### DISSENTING OPINION.

BLAND, P. J.—On September 12, 1902, defendant purchased of plaintiff (a New York corporation, authorized to do business in Missouri) one thousand barrels of linseed oil, at a stipulated price, for delivery during the period from November 1, 1902, to August 1, 1903, in lots of not less than seventy-five or more than one hundred and eighty barrels in any one month. The oil was delivered as per contract and all of the purchase price paid, except $1,834.90, which, on demand, defendant refused to pay, hence this suit.

The answer was, first, a general denial, and, second, three counterclaims, separately stated. The counterclaims were based upon an alleged violation of the following three contracts for the sale and delivery of linseed oil, to-wit:

"St. Louis, Mo., May 28, 1901.
"Messrs. A. A. Eberson & Co.,
          "City.

"Gentlemen:—We beg to confirm sale made you yesterday of 300 bbls. of linseed oil at 44c. basis raw for each 7½ lbs.

"1c. advance for Boiled and 3c. for Bleached.

"Bulk shipments at 2c. less.

"Terms 60 days from date of each invoice or 1 per cent for cash in 10 days.

"The oil to be taken by you at your option during the months of October, November and December, 1901.

"Thanking you and awaiting your counter-confirmation, beg to remain,
          "Yours very truly,
               "C. W. Blow, Manager."

"St. Louis, Mo., Sept. 7, 1901.
"A. A. Eberson & Co.,
          "City.

"Gentlemen:— We beg to acknowledge receipt of your esteemed order for 120 bbls. of Linseed Oil for delivery at your option between October 1, 1901, and Jan. 30, 1902.

"Raw, at ................ 40c. for each 7½ lbs.
"Boiled at ................41c. for each 7½ lbs.
"Bleached at ............. 44c. for each 7½ lbs.
"Terms 30 days or 1 per cent for cash in 10 days.
"Please issue counter-confirmation.
"We thank you for favoring us.
          "Yours very truly,
               "C. W. Blow, Manager.

"Correct this please to read June 30th.

"The delivery on above is October 1, 1901, to June 30, 1902.

"C. W. BLOW, Manager."

"St. Louis, Mo., Sept. 12, 1901.
"Messrs. A. A. Eberson & Co.,

"City.

"Gentlemen:

"Beg to confirm sale made you on the 9th for 120 bbls. of Linseed Oil for delivery at your option during the period from October 1, 1901, to June 30, 1902, at 40c. for each 7½ lbs. Raw Oil, 41c., for each 7½ lbs. of Boiled Oil, 44c. for each 7½ lbs. of Bleached Oil delivered.

"Terms 30 days or 1 per cent for cash in 10 days from date of each invoice.

"Kindly favor us with your counter-confirmation by return mail and oblige.

"Yours very truly,
"C. W. BLOW, Manager."

It was alleged in the three counterclaims, in substance, that defendant, on the first, second and third of October, 1901, demanded the delivery of all the oil called for in the contracts of May 28th, and September 7, 1901, and on the twenty-sixth of September, 1901, demanded the delivery of all the oil called for by the contract of September 12, 1901; that plaintiff failed to deliver the oil as demanded, whereby defendant was damaged on account of a decline in the price of the oil thereafter. The counterclaims show that all the oil called for by the several contracts was delivered within the period mentioned in each of them.

A reply was filed, the contents of which it is not necessary to set out, in view of the construction the learned trial court put upon the several contracts. At the opening of the trial the defendant withdrew his general denial and admitted the amount sued for was due under the contract of September 12, 1902.

To establish his counterclaims, defendant introduced evidence tending to show that on September 26, and October 1 and 2, 1901, he demanded of plaintiff the delivery of the entire five hundred and forty barrels of oil called for by the three contracts, on which his counterclaims were predicated, and that plaintiff failed to make delivery, and although plaintiff subsequently delivered the oil, within the periods mentioned in the several contracts, the failure to deliver on October first caused a loss to him.

The court, at the instance of plaintiff, gave the following instructions:

"The court instructs the jury that under the pleadings and admissions of the defendant in this case the plaintiff is entitled to recover on the cause of action stated in the petition, and your verdict must, therefore, be in favor of the plaintiff on the plaintiff's cause of action for the sum of eighteen hundred and thirty-four dollars and ninety cents, with interest on said sum at the rate of six per cent per annum from February 1, 1904, to this date, amounting in all to the sum of two thousand and sixty-two dollars and sixty cents.

"'The court instructs the jury that under the pleadings and the evidence the defendant is not entitled to recover under any of his counterclaims."

Verdict and judgment for plaintiff for $2,062.60, from which defendant duly appealed.

1. The learned trial judge ruled, that under the contracts of May 28 and September 12, defendant had no right to demand the delivery of all the oil on one day. Under the contract of September 12, 1901, deliveries at defendant's option were to be made "during the period from October 1, 1901, to June 30, 1902." Under the contract of May 28, 1901, oil was to be taken by defendant, at his option, "during the months of October, November and December, 1901." Under the terms of the latter contract it is evident the parties con-

templated deliveries should be made in each of the months of October, November and December, as ordered by the defendant; if such was not the understanding, then the disjunctive "or" instead of the conjunctive "and" between the words, "November and December," would have been used. The contract of September 12, 1901, on account of the use of the phrase, "during the period from October 1, 1901, to June 30, 1902," is left in uncertainty, for the reason the word "during" may mean "in the time of" or "through the continuation of" the period mentioned in the contract for delivery (Bird v. Beckwith, 60 N. Y. Supp. 1041); if it means "in the time of" the contract period, defendant had the right to order all the oil called for by the contract to be delivered on the first, or on any other day between October 1, 1901, and June 30, 1902; if it means "through the contract period," then defendant was required to exercise his option, if he elected to exercise it, by ordering oil at reasonable intervals, through the contract period. For the purpose of determining what was in the minds of the parties, in respect to the delivery of the oil, we think the court properly admitted evidence of the previous course of dealings between the parties. This evidence was brought out on the cross-examination of plaintiff's witnesses, and showed that defendant was a manufacturer of paints and varnishes, in the city of St. Louis, and to some extent a wholesale dealer in linseed oil; that he used about one barrel of oil per day in his business, and since 1899 had obtained his supplies from plaintiff which, with the exception of a few large orders delivered to defendant's customers on his order, were delivered at his place of business in small quantities, at intervals of a few days during each month as he would order. In the light of this evidence, we think the word "during," as used in the contract, should be construed to mean "in the time of," and that the parties meant

and intended that the oil called for by the contract should be delivered through the contract period, that is, deliveries should be made in each month of the period as ordered by defendant. Under this construction defendant was not entitled to recover anything for the alleged violation of the contracts of May twenty-eighth and September twelfth.

2.    In respect to the contract of September seventh, I think defendant had the option to require a delivery of the one hundred and twenty barrels of oil mentioned in that contract on any day between October 1, 1901, and June 30, 1902, and is entitled to recover, if he exercised his option by demanding the delivery of the one hundred and twenty barrels on any day between said dates. Defendant's testimony is that he demanded a delivery of all the oil called for in the three contracts on September twenty-sixth, and renewed his demand on October first and second; that plaintiff denied he was entitled to a delivery of the whole and thereafter delivered the oil from time to time in small quantities until it was all delivered. There was no separate demand made at any time for the delivery of one hundred and twenty barrels of oil called for in the contract of September seventh. It is conceded that under the terms of said contract, a request for the delivery of the one hundred and twenty barrels of oil was an essential prerequisite to defendant's right to recover for a breach of the contract; and defendant contends that as the demand for the delivery of five hundred and forty barrels necessarily included the one hundred and twenty barrels, the delivery of the one hundred and twenty barrels was requested. The demand was for the performance at one time of three distinct and independent contracts as though they were one. If the demand had individualized the several contracts, and defendant had requested a delivery of all the oil specified in each, plaintiff would have been notified that defendant de-

manded a performance of the contract of September seventh; but the demand for the delivery of five hundred and forty barrels of oil cannot be construed to be a separate request for the delivery of one hundred and twenty barrels, under the contract of September seventh, nor would the tender of a delivery of the one hundred and twenty barrels by plaintiff have been a compliance with the demand for the delivery of five hundred and forty barrels. When a demand for performance is an essential prerequisite to recover for a breach of a contract, the demand should not be for more than the plaintiff is entitled to have, and should be sufficiently definite and certain to notify the opposite party that a performance is requested. If the demand is coupled with or only embraced in a demand for the performance of several contracts in gross, the performance of some of which is not due, the demand is too uncertain to require performance. If A held B's three several promissory notes due on different dates but not to bear interest until after maturity and demand of payment, and on the maturity of the first note to become due, B should demand payment of all three of the notes, it would hardly be contended that the demand was sufficient to entitle B to interest on the first note to fall due from the date of his demand. So, the demand of defendant for the delivery of all the oil covered by the three contracts (five hundred and forty barrels) when he was entitled to have but one hundred and twenty barrels, was not a demand for the delivery of the one hundred and twenty barrels, and hence defendant was not entitled to recover on his counterclaim for a breach of the contract of September seventh. For these reasons I think the judgment should be affirmed.