SIDNEY CHASE & others *vs.* CITY OF BOSTON.

Suffolk. November 15, 1906. — January 3, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Tax. Pledge. Broker.*

Where a broker buys shares of stocks upon orders in writing from his separate customers with a specific agreement with each customer that the ownership shall be in the customer subject to a lien of the broker for any indebtedness to him, each order directing the broker to buy a certain number of shares of specified stocks for the account and risk of the purchaser, and the broker makes the purchases as directed and notifies each customer of the purchase and the price paid, and the customers make part payments to the broker, usually of about forty per cent of the price, and the certificates for the purchased shares with blank transfers signed by the former owners named therein are left with the broker as security for the balance of the price due from each customer to the broker, the broker being expressly authorized by the customer to pledge the shares for loans to himself, and the broker does this as his convenience demands, but the certificates of stock bought for and belonging to each customer are kept apart in a separate envelope, whether pledged or not, the broker holds the shares .as a pledgee with the right to repledge them to others, and they are not taxable to him but are taxable to the customers who are the owners and pledgors.

St. 1903, c. 423, § 1, relating to the transfer of shares in corporations by delivery of the certificates signed in blank, now contained in St. 1903, c. 437, § 28, does

not operate to make the pledgee of such shares the absolute owner, and where certificates thus signed in blank are delivered as security under a contract of pledge the shares are taxable to the pledgor.

R. L. c. 12, § 26, providing that "personal property mortgaged or pledged shall for the purpose of taxation be deemed the property of the party in possession thereof on the first day of May," refers only to tangible property, and does not apply to a pledge of shares of stock in a corporation.

Under R. L. c. 12, § 46, if a taxpayer has brought in a sworn list of assessable property in accordance with the requirements of the preceding sections of that statute and has not refused to answer on oath any necessary inquiries of the assessors as to the nature and amount of his property, the assessors must receive the list as true, and lawfully cannot refuse to abate a tax on the ground that the list should have contained property not included in it.

PETITION, filed in the Superior Court on April 11, 1906, to abate a tax assessed upon the petitioners on May 1, 1905.

The case was referred to Henry W. Bragg, Esquire, as commissioner, who filed a report. It appeared from the report that the petitioners on May 1, 1905, were stockbrokers doing business in Boston under the firm name of Chase and Barstow, with a cash capital of $60,000, on which it was admitted that they were taxable.

The purchases of securities made by them as brokers were made on orders in writing signed by the persons for whom the purchases were made, upon the following form:

" Boston,            190
" Chase & Barstow,

" Buy

" Buy, for my account and risk,

This order good till

" Signature

" Address                           ."

An agreement was made between the petitioners and each customer as follows:

" It is agreed that Chase & Barstow have the right to pledge for loans made to them any securities delivered to them by me as collateral security or bought by them on my order; but the ownership of such securities as are delivered by me to them as collateral security shall continue in me, and the ownership of all securities bought by them on my order shall be mine on their

purchase, and continue in me, only subject to a lien of Chase & Barstow thereon to secure my indebtedness to them."

The petitioners kept each customer's stock separate.

The assessors rejected the statement filed by the petitioners, and doomed them on a valuation of $300,000. It further appeared that the petitioners had in their possession on the first day of May stocks in corporations which were taxable of the estimated value of $617,154, which they held under the foregoing agreements and which they had not pledged.

The case was heard by *Pierce*, J. upon the petition and answer, the commissioner's report and the facts found and stated therein. The judge found and ruled thereon that the petitioners should have been assessed a tax upon $60,500 shown by their list returned to the assessors, and not a tax upon $300,000 as doomed by the assessors, and that the petitioners were entitled to be allowed an abatement of $3,832, with interest thereon from November 1, 1905. He ordered judgment for the petitioners in the sum of $3,832, with interest thereon from November 1, 1905.

To this finding, ruling and order the defendant excepted, and at the request of the parties the judge reported the case for determination by this court.

*J. H. Benton, Jr.*, for the petitioners.

*S. M. Child*, for the respondent.

SHELDON, J. If the stocks bought and held by the petitioners for their customers had been bought upon a margin in the ordinary significance of that word, the legal title to them would have been in the petitioners, who in that event properly would have been taxed for their value, and the petition could not have been maintained. *Chase* v. *Boston*, 180 Mass. 458. But that is not the case. All of these stocks were bought by the petitioners upon written orders from their customers, with a specific agreement that the ownership should be in the customers, subject only to a lien in favor of the petitioners for any indebtedness to them. Each of these orders directed the petitioners to buy a certain number of shares of specified stocks for the account and risk of the purchaser. If the petitioners made the purchase, they notified the customer of the price paid therefor, and he would pay either the whole or some

part of that price.  In the first event, he received his stock certificate, made out either in his own name or in the name of some former owner but with blank transfers upon the back signed by such former owner.  In the latter event, the balance of the price, usually about sixty per cent thereof, was lent to him by the petitioners, and the certificates, with blank transfers properly signed by the owner named therein, were left with the petitioners as security for the indebtedness thus created.  The petitioners were authorized by the customer to pledge for loans to themselves these securities or any securities left with them as collateral security; and they did so as their own convenience demanded.  But the certificates of stock bought for and belonging to each customer were kept apart from all others, in separate envelopes, whether pledged or not; and the petitioners made such arrangements with their pledgees as to be able always to give to each customer his own specific stocks upon his paying the balance due for the price thereof.

Manifestly upon these facts, if there were nothing more, it would appear that the petitioners held these stocks as pledgees, with the right to repledge them to others, and that the purchasers were the owners and pledgors.  They were bound to keep, as it is found that they did keep, the stock of each customer distinct; they could not take a single certificate in their own name for all the similar stock purchased for all their customers; and they were bound to deliver, as they were accustomed to deliver, to each customer the identical stock purchased for him.  It would follow that not the petitioners, but the rightful owners respectively of these stocks should be taxed for them, that the petitioners were entitled to the abatement which they seek, and that the judgment of the Superior Court should be affirmed.

It is contended however for the respondent that the effect of St. 1903, c. 423, § 1, is to make the petitioners the general owners of the stocks in question, and so liable to taxation upon them.  That statute provides that "the delivery of a certificate of stock by the person named as the stockholder in such certificate or by a person entrusted by him with its possession for any purpose to a *bona fide* purchaser or pledgee for value, with a written transfer thereof, or with a written power of attorney to

sell, assign or transfer the same, signed by the person named as the stockholder in such certificate, shall be a sufficient delivery to transfer title as against all persons; but no such transfer shall affect the right of the corporation to pay any dividend due upon the stock, or to treat the holder of record as the holder in fact until it has been recorded upon the books of the corporation, or until a new certificate has been issued to the person to whom it has been so transferred. Such purchaser, upon delivery of the former certificate to the treasurer of the corporation, shall be entitled to receive a new certificate. Stock shall not be transferred upon the books of the corporation if any instalments thereon remain overdue and unpaid. A pledgee of stock transferred as collateral security shall be entitled to a new certificate if the instrument of transfer substantially describes the debt or duty which is intended to be secured thereby. Such new certificate shall express on its face that it is held as collateral security, and the name of the pledgor shall be stated thereon, who alone shall be liable as a stockholder, and entitled to vote thereon." These provisions are now contained in St. 1903, c. 437, § 28. See also St. 1906, c. 463, Part II, § 41, and Part III, § 22.

But the object of this statute was merely to protect stock so transferred against attachments or other accruing claims against the apparent owner of record. It was not intended and cannot operate to raise the title of a pledgee into an absolute ownership. Nor was it designed to throw the burden of taxation upon the pledgee and to exonerate therefrom the general owner, even though the transfer was not upon its face expressed to be by way of security only. Manifestly an owner of stock could not escape his liability to be taxed therefor by merely pledging it to a creditor; manifestly he could not withdraw it wholly from the fund available for taxation in this Commonwealth by transferring it in blank and delivering the certificates in pledge to a foreign creditor who was beyond the reach of any of our local assessors. Such property is to be taxed to the pledgor, not to the pledgee. The latter does not escape taxation, for by our statutes he is to be taxed for the debts which are secured by the pledge, though entitled to an allowance for such debts as may be due from himself. R. L. c. 12, § 4, cl. 2. The provisions of

§ 26 of this chapter refer to tangible property, not to mere intangible entities like titles to corporate stocks. *Waltham Bank* v. *Waltham,* 10 Met. 334, 338. *Hall* v. *County Commissioners,* 10 Allen, 100, 101. The St. of 1903, c. 423, was not passed with the purpose of repealing the rule of these decisions ; it was designed wholly *alio intuitu,* to regulate the rights of holders of stocks among themselves.

Accordingly we are of opinion that the petitioners were not liable to taxation upon the value of these stocks, and are entitled to the abatement which they claim.

Even if the main contention of the respondent were correct, however, it is at least difficult to see how the act of the assessors in rejecting the petitioners' sworn statement and " dooming " them in the arbitrary sum of $300,000 could be upheld. The list of copartnership property contained in this statement was made up in accordance with the requirements of R. L. c. 12, §§ 42 *et seq.* It is provided by § 46 of this chapter that the assessors " shall receive as true, except as to valuation, the list brought in by each person, unless, on being thereto required by the assessors, he refuses to answer on oath all necessary inquiries as to the nature and amount of his property." It is found that the petitioners made no such refusal, and it did not appear from their examination that the list was not a true one. *Hall* v. *County Commissioners,* 10 Allen, 100. Apart from the fact that this list is now found to have been correct, it therefore seems to have been conclusive upon the assessors, as they did not choose to require any further answers upon oath from the petitioners. *Moors* v. *Street Commissioners,* 134 Mass. 431. *Lincoln* v. *Worcester,* 8 Cush. 55, 64. *Newburyport* v. *County Commissioners,* 12 Met. 211, 223. We have preferred, however, to rest our conclusion upon the first and principal question in dispute, understanding this to be the desire of both parties.

In accordance with the terms of the report, the judgment of the Superior Court is to be

*Affirmed.*