JONES v. SEAMAN et al.

(Supreme Court, Appellate Division, Second Department. June 4, 1909.)

CORPORATIONS (§ 123*)—STOCK PLEDGE—TRANSFER.

Plaintiff pledged certain corporate stocks to secure a loan. The pledgee transferred the stock to S., his agent, without consideration, and with knowledge of plaintiff's rights, after which the stock was transferred on the books of the company to S., and he indorsed the certificates in blank and redelivered them to the pledgee, who retained possession of the same thereafter. *Held* not a conversion of the stock, and that plaintiff could

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

not recover the value thereof until tender of the debt and refusal then to deliver the stock.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 123.*]

Appeal from Trial Term, Kings County.

Action by William C. Jones against Frank Seaman and another. Judgment for defendants, and plaintiff appeals. Affirmed.

Argued before WOODWARD, JENKS, GAYNOR, BURR, and MILLER, JJ.

H. J. McCormick, for appellant.
Waldo G. Morse, for respondents.

WOODWARD, J. There is no substantial dispute as to the facts in this case. The plaintiff owned 100 shares of the stock of the Berliner Gramophone Company. He borrowed, as he claims, $1,000 of the defendant Seaman, giving his note for the same, depositing the Gramophone Company stock as security for the payment of the loan. The defendant's version is that he bought the stock, giving the plaintiff an option to repurchase the same at a future date; but the truth seems to be that the transaction in spirit was that the defendant Seaman held the stock as collateral to the plaintiff's note, and it appears to have been thus treated by the parties, whatever the form of the transaction may have been.

The plaintiff brings this action to recover the stock, or, in the event of the defendant not being able to deliver the same, the value thereof, and also to recover damages alleged to have been sustained by reason of a conversion of the stock; it being claimed that the defendant Seaman transferred the stock to the defendant Smith, without consideration, thereby working a conversion, and that while the stock was thus in the name of the defendant Smith it depreciated from $40 per share to $5 per share. The judgment from which this appeal is taken directs the defendants to deliver the stock, the present agreed value of which is $100, upon the payment to the defendant Seaman of the $1,000 which it is conceded the plaintiff borrowed from him, with interest on the same, or to pay the present value; and the plaintiff appeals from the judgment, urging that he was entitled to go to the jury upon his claim for damages due to the depreciation during the time that the stock was held by Smith.

The real question in the case is whether there was a conversion of this stock. The complaint alleges that the defendant Seaman—

"fraudulently, unlawfully, and in bad faith, seeking and contriving to cheat and defraud this plaintiff of said 100 shares of stock, pledged and deposited with him as aforesaid, and the dividends and earnings thereof, did contrive and confederate with the above-named defendant William C. Smith, who then and there was the certain agent and servant and employé of the defendant Seaman, and who had full knowledge of the rights of property and ownership of this plaintiff in the aforesaid shares of stock, and who did, without consideration and in bad faith, take and receive from the said Frank Seaman the said shares of stock, thereupon the said defendants and each of them did cause and procure the said certificate of stock No. 176 for 100 shares of the capital stock of the Berliner Gramophone Company, to be transferred on the books of said company to the name of the said defendant William C. Smith, whereby

and on account whereof the said defendants and each of them did cheat and defraud said plaintiff of said 100 shares of stock, and did unlawfully and fraudulently convert the same to their own use and to the use of the said defendant William C. Smith," etc.

Obviously, if these averments are true, and Smith was the agent, servant, and employé of Seaman, the transfer of the stock to the name of Smith, with knowledge of the facts, did not operate to divest Seaman of the title to the stock. He was still in control of the same, through his agent, and this is exactly what the defendants claim. Defendant Seaman's answer admits that Smith took the stock from him, and that it was transferred on the books of the company to the name of Smith, but denies that this was done fraudulently or unlawfully, and avers that "this defendant transferred to the defendant Smith only and solely the rights, obligations, and property of this defendant of, in, to, and had in connection with said stock, and that said defendant Smith acquired no other or different property or rights therein whatever," so that there is no substantial question of fact involved; the plaintiff producing no testimony to support the allegations of fraud.

The situation was simply this: The plaintiff borrowed $1,000 of the defendant Seaman, depositing the shares of stock as security for the payment of the loan. Seaman had a perfect right to hold this stock until the loan was paid, and he had a perfect right to hold that stock in the name of his "agent, servant, and employé," who, having notice of the situation, took no other or greater title or interest in the stock than was held by his principal, and in this there appears to be no disagreement as a matter of law. The situation is thus in effect the same that appeared in Lewis v. Mott, 36 N. Y. 395, where it was held that, where property pledged as collateral security for the payment of a note has been sold or transferred to a third party, who has a lien thereon for the payment of such note, the holder of such collaterals cannot be required to deliver them up until there has been a tender of the amount due. Whether Smith be regarded as the agent of Seaman, holding for him, or as holding in his own right, with notice of the interest of the plaintiff in the stock, he certainly had a lien upon the stock for the payment of the debt, and until the plaintiff had made a tender of the debt, with interest, either to Seaman or to Smith, he had no right to the delivery of this stock, and neither of the defendants could be guilty of conversion. Changing the names, the language of the court in the case cited is strikingly in point. The court say:

"How (Seaman) clearly had a lien upon these securities for the payment of the amount of the two notes and interest. It must be conceded that Varnum (Smith), by the purchase of these securities from How (Seaman), acquired at least the interest and lien of How (Seaman), whatever that may have been; and the plaintiff's assignor, to have entitled himself to a redelivery of these securities, must have tendered the amount of the lien. There was simply an offer to pay to Varnum (Smith) the amount due upon these notes. It was unaccompanied by any tender of the amount due, and was insufficient to extinguish the lien, and thus entitle Brown to the possession of the notes. He could not, clearly, maintain an action for conversion, unless he was entitled to such possession. Until a wrongful detention, after a demand and refusal were shown, there was no evidence of a conversion. The possession of Varnum (Smith) in this aspect was lawful, and its character could not be chang-

ed, until some act was done which made it unlawful longer for him to retain these securities. Hall v. Robinson, 2 N. Y. 293. A tender of the amount due on the two notes, assuming Varnum (Smith) held them as the substitute of How (Seaman), might have entitled Brown to the possession of the securities. But, clearly, on no theory was he entitled to them, except upon payment of the amount of the lien, or a tender and refusal. Such tender has not been made. The offer to pay is not the equivalent for an actual tender."

See Thompson v. St. Nicholas Nat. Bk., 113 N. Y. 325, 333, 21 N. E. 57, 58, and authorities there cited; Ogden v. Lathrop, 65 N. Y. 158; Byrne v. Weidenfeld, 113 App. Div. 451, 453, 99 N. Y. Supp. 412, 414, and authorities there cited.

The plaintiff never made a tender of the $1,000 to Seaman or to Smith; neither Smith nor Seaman ever claimed to hold this stock in any other capacity than under the arrangement for its delivery to Seaman, whatever that may have been; and they have at all times, it appears, been ready, willing, and able to deliver the same when the plaintiff was ready to pay the amount which he had undertaken to pay, and for which he had deposited this stock. The mere act of transferring the stock upon the company's books did not operate to constitute a conversion. The plaintiff had a certain property in the stock; but he had no right to possession until he had performed the condition of tendering payment of the amount loaned, and in the meantime the particular location of the stock was of no consequence. As a matter of fact, the stock was transferred on the books, and the certificate in Smith's name was indorsed in blank and redelivered to Seaman, who has been in position at all times to comply with a demand for the delivery of the stock; and it is the plaintiff's own fault, in not paying his debt, which has prevented the full performance of the conditions.

There were no questions in this case for the jury, the court properly directed the verdict, and the judgment appealed from should be affirmed.

Judgment affirmed, with costs. All concur.