[File No. 6844.]

C. A. NYE, Respondent, v. VERNON JOHNSON and First National Bank & Trust Company of Fargo, a Corporation.

FIRST NATIONAL BANK & TRUST COMPANY OF FARGO, a Corporation, Appellant.

(4 NW(2d) 819.)

Opinion filed July 1, 1942.   Rehearing denied Aug. 4, 1942.

*Conmy & Conmy,* for appellant.
*Charles G. Bangert,* for respondent.

BURR, Ch. J.   The record shows plaintiff was the owner of some old machinery, and he alleges both defendants converted this property to

their own use. Johnson admitted taking possession of machinery, which he claims to have purchased from the codefendant as scrap iron under the belief the bank had the right to sell it, and alleged further that he did not have sufficient information to know whether the property described in the complaint was the property which he took. The defendant bank denied that it was in any way indebted to the plaintiff because of this machinery. The jury found for the plaintiff against both defendants, and the defendant bank appeals.

The property lay for years in a field some four miles from Fargo. The record shows the defendant Johnson had opened negotiations with H. D. Crosby, vice president of defendant bank, for the purchase of what he termed "scrap iron" in the form of old machinery, which he stated he understood was the property of the estate of one Twichell, deceased, and that the bank had the right to sell it. He was informed the bank knew nothing of any Twichell property being in that neighborhood, but if there was any, the bank had the right to sell it, and would sell whatever Twichell property there was in that field to defendant Johnson upon his payment of $20, title to the property to be transferred upon payment in full.

Johnson made a down payment of $5, but instead of paying the remainder, he began removing plaintiff's machinery, claiming this as Twichell's property. On three occasions plaintiff notified him that the property he was taking never belonged to Twichell. The matter was brought to the attention of the bank, and Crosby stated to both plaintiff and Johnson that the bank was not selling any property except such as belonged to Twichell; that Johnson was not to take any other property; and that unless it belonged to Twichell, Johnson was to leave it alone. Mr. Crosby further said, according to the plaintiff, "he didn't sell it. That he left it to him." This clearly implied that Crosby had no intent to sell Nye property and left it to Johnson to discover whatever Twichell property there was. The record is quite clear there was no Twichell property there.

The plaintiff had a deputy sheriff go to the field to prevent Johnson's taking the property, and later the plaintiff and the deputy sheriff had a conference with Mr. Crosby, in which Crosby told them that any property he had sold was property supposed to belong to Twichell.

The only direct testimony we have in regard to the deal between Crosby and Johnson is given by the witness Crosby. Johnson was not a witness. Crosby testified that when Johnson approached him about the purchase of the property, he told him that so far as he knew, the bank did not have any property out there in which it had any interest; but when told by Johnson that he had understood there was some Twichell property there, he told him, "If there is any Twichell scrap iron out there we are willing to sell it, providing you will pay for it. But . . . You want to be absolutely sure it is Twichell scrap iron before you touch it or do anything with it, and you also want to pay the purchase price before you touch it or do anything with it."

He further testified that he told Johnson not to touch the stuff "until he knew for sure that it was Twichell scrap. And if it wasn't Twichell scrap to leave it alone because he wouldn't have any right to sell it."

There is no real dispute in regard to this feature, though much stress is laid on incidental and isolated statements alleged to have been made by Crosby to various witnesses for the plaintiff.

Plaintiff urges the record shows the interest which the bank had in any Twichell property was an interest which arose on account of chattel mortgages and trust agreements made between Twichell and the bank to secure indebtedness to the bank; that the bank had the opportunity of determining what Twichell property it had an interest in; and because the officials had not examined the mortgages and trust agreements in order to ascertain the identity of the property, and had sold alleged Twichell property to Johnson, the bank had in effect made Johnson its agent and so was liable for any of the acts of Johnson in taking possession of the plaintiff's property, and, therefore, was guilty of conversion, being connected with Johnson's unlawful act, citing Indiana Harbor Belt R. Co. v. Alpirn, 139 Neb 14, 296 NW 158. But this is a case where a public carrier intentionally sold a shipper's property without his consent. On this point plaintiff cites Talich v. Marvel, 115 Neb 255, 212 NW 540, holding that "in wrongful conversion, each and all knowingly participating therein, or who, with knowledge, benefit by its proceeds in whole or in part, are principals."

The trouble with that citation is that it is not applicable to the case

at bar. The bank did not participate in the conversion, or benefit by its proceeds. Whatever money the bank got from Johnson for Twichell scrap iron it obtained before Johnson interfered with plaintiff's dominion over the property.

Plaintiff also cites the case of Skinner v. First Nat. Bank & T. Co. 61 SD 481, 249 NW 821, to the effect that any person aiding in conversion of property is responsible to the owner. However, this leaves for determination of fact whether the bank aided in the conversion.

It is clear the bank at no time ever made any pretense of ownership or possession of plaintiff's property, nor did the bank at any time ever exercise any dominion over the property which Johnson took. The record shows the bank had a right to dispose of Twichell property, and whatever deal was made between the bank and Johnson was for the sale of Twichell property. That Johnson was mistaken in assuming the property he had in mind was Twichell property does not relieve him from liability for conversion, for he took the plaintiff's property, but this cannot be charged against the bank. There is an entire absence of any evidence showing the bank by word or act said to Johnson that this specific property which Johnson afterwards took "belongs to Twichell and we have the right to sell it." Being told by Johnson that there was Twichell property there, the bank told him, "Whatever Twichell property there is, we will sell to you." This did not make the bank liable for any act of Johnson in taking property that did not belong to the Twichell estate.

To support trover action, there must have been wrongful taking or detention, illegal assumption of ownership, illegal user or misuser of plaintiff's property, an attempt to deprive the owner of his general right and dominion over his chattel (Wolff v. Zurga, 227 Ala 370, 150 So 144; Genuine Panama Hat Works v. Paragon Hat Co. 245 Ill App 531; McGreevey v. New York C. R. Co. 143 Misc 519, 256 NYS 211; Lee Tung v. Burkhart, 59 Or 194, 116 P 1066); and where there is no denial of plaintiff's property, and no claim of property in the defendant, there can be no conversion. Salt Springs Nat. Bank v. Wheeler, 48 NY 492, 497, 8 Am Rep 564, 567.

A nonfeasance or neglect of legal duty by which property is lost to

an owner will not support an action for conversion (Cotton v. Harris Transfer & Warehouse Co. 21 Ala App 136, 106 So 220), as something more than mere nonfeasance must be shown; something equivalent to affirmative action is necessary. Oakdale Farms v. Rutland R. Co. 104 Vt 279, 281, 158 A 678, 679.

The record in this case falls far short of showing any attempt on the part of the bank to assume dominion over any property which belonged to the plaintiff. The only dereliction of the bank shown, if any be shown, is its failure to investigate whether there was Twichell property there, and in relying on Johnson's hearsay. There is no pretense the bank pointed out this property to the defendant and claimed to be the owner, or stated to the defendant that the property at that place, or even any portion of the property there, belonged to Twichell. If there was any Twichell property there, the bank would sell it to the defendant Johnson. This was not an authorization to Johnson to go out and take any property he found there; and immediately upon complaint being made that Johnson was interfering with the property of the plaintiff, the bank notified Johnson it was not selling him any property other than Twichell property, and it was up to him to find out.

Even if it could be construed that the bank meddled with plaintiff's property, intermeddling with another's property, which does not imply any assertion of title or dominion over it, and which is done in ignorance of the owner's claim thereto, and without any intention to deprive him of it, will not constitute a conversion. Steele v. Marsicano, 102 Cal 666, 669, 36 P 920, 921. See also Spooner v. Holmes, 102 Mass 503, 506, 3 Am Rep 491, 492.

From the record it is clear plaintiff's property was never in the possession of the bank. The bank never claimed any possession of the property, and never attempted to exercise any dominion over it. Johnson was not the agent of the bank in taking the property. He took property which he had not purchased, but it was not any property which the defendant bank sold to him. It is true Johnson took it in defiance of the plaintiff's right, but in this he was not even aided or abetted by the bank. There is no evidence that any representative of the bank ever saw this property or knew anything about it, and it certainly was not on the premises of the bank.

This case at bar is quite a departure from the usual conversion action, and so it is difficult to get analogous cases for investigation. In Kelly v. Oliver Farm Equipment Sales Co. 169 Okla 269, 271, 36 P (2d) 888, 890, we have a case where Kelly, the owner of several farms, had rented four of them to a man by the name of Tedford, K. to furnish the necessary machinery, including a disc plow. Without the knowledge of K., T. appropriated a plow belonging to the Oliver Company. Later Kelly borrowed this plow (not knowing its origin) for use on some other of his farms, and later the plow was found in the possession of T. on one of Kelly's farms. The Oliver Company sued both Kelly and Tedford in conversion, and recovered judgment, which was reversed by the supreme court.

This court stated, "There is no evidence to the effect that Kelly exercised or attempted to exercise or assumed any dominion over the property, or that he ever had it in his possession, or withheld the same under any claim of right or title.

"It is well settled that to make out a conversion there must be proof of a wrongful possession, or of the exercise or assumption of a dominion over personal property in defiance or exclusion of the plaintiff's rights, or else a withholding of possession under claim of right or title inconsistent with that of the true owner."

There being no evidence of conversion of plaintiff's property by the bank, the judgment rendered against this defendant must be reversed and the action dismissed as against it.

CHRISTIANSON, MORRIS, BURKE, and NUESSLE, JJ., concur.