**John A. HOOK, Plaintiff and Respondent,**

v.

**John P. CRARY and V. W. Crary, Defendants and Appellants.**

**No. 8124.**

Supreme Court of North Dakota.

March 21, 1966.

Rehearing Denied May 12, 1966.

Duffy & Haugland, Devils Lake, for plaintiff and respondent.

Whittlesey & Pancratz, and Wattam, Vogel, Vogel, Bright & Peterson, Fargo, for defendants and appellants.

BURKE, Chief Justice.

In his complaint in this action, the plaintiff, John A. Hook, alleged conversion by the defendants, John P. Crary and V. W. Crary, of 1,272.54 shares of stock of American Life and Casualty Insurance Company of Fargo. The trial of the case, which was before a jury, resulted in a verdict for the plaintiff and judgment in favor of the plaintiff in the sum of $62,376.10. After

judgment, the defendants moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. This motion was denied, in both of its phases, by the trial court, and this appeal is from the order of denial.

In addition to the specification that the evidence is insufficient to sustain the verdict and judgment, there are thirty-six specifications of error which are alleged to have occurred in the trial of the case. We shall first direct our attention to the specifications of insufficiency of the evidence in relation to the denial of judgment notwithstanding the verdict and the motion for a new trial.

Any attempt to reconcile the testimony of the parties to this case would be futile because, upon most of the material issues, it is directly conflicting. It is undisputed, however, that in December 1956 the plaintiff, John Hook, and the defendants, John P. Crary and V. W. Crary, entered into a transaction by which Hook delivered to the Crarys a certificate for 1,272.54 shares of stock of American Life and Casualty Insurance Company and received from the Crarys two checks in the aggregate sum of $1,272.54. At the same time, the Crarys executed and delivered to Hook an instrument which read as follows:

"12/21/56

"We agree that if we sell this Block of Stock within 5 yrs—Before Jan. 1, 1962—We will first offer it to John A. Hook & He will have 30 days fr the date of our offer to sell to make up his mind.

[Signed] "John P. Crary
[Signed] "V. W. Crary"

It is also undisputed that this stock thereafter appreciated in value very rapidly. In November 1957, the Crarys caused the stock to be registered in their names. In November 1957, a 400 per cent stock dividend was declared and new stock was issued in the Crarys' names. On April 23, 1959, the Crarys sold this stock by exchanging it for other stock which had a value of $63,620.70, without giving any notice to Hook. At the time of the original transaction between the parties, Hook had been, for four months, an employee of a corporation of which the Crarys were officers and stockholders.

The main issue in this lawsuit is whether the transaction by which Hook and the Crarys exchanged money and stock was a loan with a pledge of stock to secure the loan, or an outright sale with an option to repurchase.

Hook testified unequivocally that the transaction was a loan. He stated that he asked the Crarys to lend him as much as possible, with the stock as collateral, and that they agreed to make the loan upon the basis of one dollar a share. He testified that the written instrument above set forth was given to him when he asked the Crarys to give him some evidence that they held his stock. He also stated that, in the spring of 1958, he offered to repay the loan and redeem his stock, and that this offer was refused by Vincent Crary.

This testimony was categorically denied by the Crarys. They said that Hook asked for a loan, but that they refused to make it. As an alternative, they offered to buy the stock for a dollar a share, and that Hook accepted this offer.

■ In reviewing the sufficiency of the evidence upon an appeal from an order denying a motion for judgment notwithstanding the verdict, this court will view the evidence in the light most favorable to the verdict. Avron v. Plummer (N.D.), 132 N.W.2d 198; Grenz v. Werre (N.D.), 129 N.W.2d 681; Anderson v. Stokkeland (N.D.), 125 N.W.2d 665. Hook's testimony that he asked the Crarys to lend him as much money as they could, with his stock as collateral; that the Crarys said they would lend him an amount equal to one dollar per share of stock; and that the transaction was completed upon that basis, must be accepted as true upon this appeal. The Crarys, however, urged that this testimony,

even if true, is insufficient to establish a loan in that there was no promissory note, no rate of interest or due date specified, and no promise to repay.

■ In order to constitute a transaction a loan, it is not essential that the missing incidentals to which appellants point be expressly stated in the agreement. What is a loan is defined by Section 47–14–01, North Dakota Century Code. If money passes from one individual to another with an understanding that it be repaid, the law will supply missing details. Section 9–07–22, North Dakota Century Code, provides:

"If no time is provided for the performance of an act required to be performed, a reasonable time is allowed. * * *"

Section 47–14–05 of the North Dakota Century Code provides:

"Interest for any legal indebtedness shall be at the rate of four per cent per annum unless a different rate not to exceed the rate specified in section 47–14–09 is contracted for in writing. * * *"

The absence of a note is but the absence of one form of written evidence of an indebtedness. The fact that some details usually present in a loan agreement were not present in the agreement to which Hook testified may properly be, and no doubt was, argued as a circumstance affecting the credibility of Hook's testimony. The weight to be given to his testimony was, however, a question for the jury. Grenz v. Werre (N.D.), 129 N.W.2d 681; Fisher v. Suko (N.D.), 111 N.W.2d 360.

■ Hook's testimony, standing alone, was sufficient to warrant a jury verdict that the transaction was a loan. The motion for judgment notwithstanding the verdict and the motion for a new trial upon the ground that the evidence was insufficient were, therefore, properly denied.

■ We shall next consider alleged errors in admitting and excluding evidence. Specifications 1 and 2 relate to the rejection of the offer of Exhibit B in evidence and the curtailing of the examination of the defendant Vincent Crary concerning the practice of the A. W. Crary Agency in making loans to its employees. Exhibit B is a note which was signed by Hook on March 18, 1957, as evidence of an advance made by the Crary agency to him at that time. The sole purpose of this testimony was to show the usual practice of the Crary agency in making advances to its employees. Assuming that the custom of the corporation was material in an action against two of the stockholders individually, the exclusion of Exhibit B and the sustaining of the objection to further testimony on the subject by Vincent Crary did not constitute prejudicial error. Before objection was made, Vincent Crary was permitted to testify that when advances were made to agents of the corporation, notes were taken as evidence of the indebtedness, and the plaintiff, Hook, testified that he signed a note (Exhibit B). None of this testimony was stricken from the record. Thus evidence of the custom of the corporation and of Hook's participation in it was before the jury. The excluded evidence would only be cumulative in relation to the purpose for which it was offered. If the rejection of this evidence was error, it was error without prejudice and therefore not a ground for a new trial. Rule 61, N.D.R. Civ.P.

We next turn to a consideration of Specifications of Error 3, 6, and 7. As stated in the appellants' brief, these specifications relate to questions directed to the defendants for the purpose of explaining Exhibit 1, the memorandum dated December 21, 1956, and their intentions regarding the transaction.

The questions asked of the witnesses were:

"If you had intended this to be a loan would you have done anything differently?"

"At the time you prepared this writing what was your interpretation as to the price that Mr. Hook would have had to

pay [for the return of the stock] under this exhibit at a later date if you had given him the thirty days notice?"

Objections to these questions were sustained by the trial court. Appellants contend that answers to these questions were admissible to explain the ambiguities in Exhibit 1, and cite Grebe v. Swords, 28 N.D. 330, 149 N.W. 126, in support of this contention.

■ There is no question that, in proper circumstances, parol testimony may be admissible to explain an ambiguous contract or instrument. Battagler v. Dickson, 76 N.D. 641, 38 N.W.2d 720. Thus evidence of the circumstances in which the transaction was made and of the statements made by the parties to each other at the time of the transaction may be admissible. The parol evidence rule, however, has never been relaxed to a point which will permit the introduction of testimony of the undisclosed intentions of a party or his conclusions as to meaning of the language of an instrument. The statement made by this court in Witte Manufacturing Co. v. Reilly, 11 N.D. 203, 91 N.W. 42, at page 44, is appropriate here, *viz.*:

"The question objected to by the defendants related to the undisclosed and secret intention of the plaintiff at the time of the delivery. It called for no fact existing outside of the plaintiff's mind. * * * What his intention was, was a question of fact to be found by the jury from the facts shown in evidence, irrespective of his own unexpressed intent."

See also Flora v. Mathwig, 19 N.D. 4, 121 N.W. 63; Bank of Valley City v. Lee, 43 N.D. 503, 175 N.W. 575; Silbernagel v. Silbernagel, 79 N.D. 275, 55 N.W.2d 713. The exclusion of this testimony was not erroneous.

Specification 4 relates to the exclusion of an answer of Vincent Crary from con-

sideration by the jury. With respect to this incident, the transcript shows the following:

"Q. Did you talk to anyone immediately following the closing of the transaction?

"A. I did walk out into the other office and said, 'We just bought some stock.'

"Q. Who was there?

"MR. HAUGLAND: I object to that as hearsay.

"THE COURT: Was the plaintiff there when you had this talk?

"A. He might have been in the office. I don't know for sure.

"THE COURT: Sustained.

"MR. HAUGLAND: Move that this remark be stricken from the record.

"THE COURT: Stricken and the jury cautioned to disregard it."

■ The stricken statement was clearly hearsay. Defendants, however, claim that it was properly admissible under the res gestae exception to the hearsay rule. As we view the record, there was no sufficient foundation to bring the statement within the exception. The statement was made subsequent to a simple business transaction. It involved no incidents which would cause emotional stress or shock so that the statement could be characterized as a spontaneous exclamation made under circumstances which stilled the reflective capacity of the speaker. We are of the view that the rule applied by this court in State v. Murphy, 17 N.D. 48, 115 N.W. 84, 17 L.R.A.,N.S., 609, is applicable here. In that case, we said:

"The contract had been entered into and the parties had separated, and what was said of McAllister was simply a narration of what had taken place. To render declarations or evidence competent as

part of the res gestae, they must be so closely related to the principal fact as to show that they are spoken under the influence of the principal fact, and not in narration of it."

It is our conclusion, therefore, that the striking of this testimony was not erroneous.

In Specification of Error No. 5, it is said that the trial judge erred in rejecting defendants' offer to prove that Tom Akeley, an uncle of the plaintiff, and John Haugland, an attorney, had not, in conversations with defendants concerning the claim of the plaintiff, mentioned the plaintiff's claim that his transaction with the defendants was a loan. The objection to the offer of proof was sustained on the ground that there was no proof that Akeley and Haugland were agents of the plaintiff. Defendants, however, say that there was some proof of agency, and that the fact and extent of agency should have been submitted to the jury. The testimony with respect to Akeley's agency is as follows:

"Q. Did he [Akeley] call on them with your authority?

"A. Yes.

"Q. And at your request?

"A. He asked if he could, yes. Did not ask him to. I said yes, he could."

■■■■ It is clear from the above that Akeley was a volunteer who called on defendants with the permission of the plaintiff. The word "authority," as used in the first question, is fully explained by the witness's subsequent answer. Akeley was authorized only to call on defendants. There is no evidence in the record that Haugland was the agent or attorney of the plaintiff. Plaintiff testified positively that he did not employ Haugland until some months after the incident referred to. The foundation for this proof was insufficient and the offer was properly rejected by the court. We point out also that, even if agency had been established, the proposed offer of proof

would have been incompetent. As stated in 20 Am.Jur., "Evidence," Section 599, pages 510 and 511, "Clearly, declarations of an agent relating to past occurrences in which he did not participate and over which he exercised no control are not admissible to charge his principal."

In their tenth specification of error the defendants assert that the court's instruction that defendants had the burden of proving the affirmative defenses set forth in their answer by a preponderance of the evidence, was erroneous. The record shows that this instruction followed immediately after the outlining of the issues in the case by the trial judge. He set forth the contentions of the parties under the pleadings and the evidence and then stated:

"The Court instructs the jury that to entitle the plaintiff to recover in this case he must prove the allegations of his complaint by a fair preponderance of the evidence.

\* \* \* \* \* \*

"Likewise the burden is upon the defendants to prove the affirmative defenses set forth in their answer by a fair preponderance of the evidence."

■■■■ There can be no question but that the instruction is a correct statement of the law. Defendants contend, however, that the instruction was not applicable to the issues in the case because no affirmative defenses were submitted to the jury. In this contention defendants are correct. The only issue submitted to the jury was: Was the transaction between the parties a loan with a pledge of stock as security, or was it a sale? Plaintiff alleges it was a loan, and defendants allege it was a sale. Although defendants deny that the transaction was a loan and pleaded, as an additional and separate defense, that the transaction was a sale, evidence as to what defendants contended was the true nature of the transaction would have been admissible under the general denial. We agree, therefore, that it was error to give the chal-

lenged instruction. If the jury considered that defendants' allegation that the transaction was a sale, was an affirmative defense, the instruction then contained directions to find for the plaintiff if he sustained the burden of proof that the transaction was a loan, and to find for the defendants if they sustained the burden of proof that the transaction was a sale. The instructions also contained the following statement:

> "Your first duty after entering upon your deliberations of this case will be to decide from all the evidence in the case and these instructions, whether the transaction of December 21, 1956, was a loan, as claimed by the plaintiff, or a sale, as claimed by the defendants."

We must assume that the jury followed this instruction and that it proceeded to determine whether the transaction was a loan. Upon this issue, the jury was correctly instructed that the plaintiff had the burden of proof. We assume, therefore, that the jury found that the plaintiff had sustained the burden of proof upon that issue. Once that issue was decided in his favor, the plaintiff's right to recover in some amount was established. It is well established that the court's instructions will be considered as a whole. Quam v. Wengert (N.D.), 86 N.W.2d 741; Reservation Motor Corp. v. Mayer, 77 N.D. 431, 43 N.W.2d 537; McGregor v. Great Northern Ry. Co., 31 N.D. 471, 154 N.W. 261, Ann.Cas.1917E, 141.

In the case of McGregor v. Great Northern Railway Co., supra, 154 N.W. at page 266, we quoted with approval from Thompson on Trials, Section 2407, as follows:

> "The charge is entitled to a reasonable interpretation. It is construed as a whole, in the same connected way in which it was given, upon the presumption that the jury did not overlook any portion, but gave due weight to it as a whole; * * * If, when so construed, it presents the law fairly and correctly to the jury, in a manner not calculated to

mislead them, it will afford no ground for reversing the judgment, although some of its expressions, if standing alone, might be regarded as erroneous, or because there may be an apparent conflict between isolated sentences, or because its parts may be in some respects slightly repugnant to each other, or because some one of them taken, abstractly, may have been erroneous."

In the light of the instructions considered as a whole, the instruction that the defendants had the burden of their affirmative defenses was not prejudicial. The jury was instructed to consider, first, if the transaction was a loan or a sale, and that the plaintiff had the burden of proof to establish that the transaction was a loan. Having found that the transaction was a loan, the main issue in the case was decided, and the instruction as to affirmative defenses could result in no prejudice.

The defendants challenge the instruction of the court which permitted the jury to determine the date of the alleged conversion. We reproduce the pertinent part of the challenged instruction:

> "It is for the jury to say, from all the evidence in the case, when such conversion by the defendants, if any, took place, whether on November 8, 1957, when the defendants had such stock registered in their names on the books of the American Life & Casualty Company, or on December 9, 1957, at the time of the stock dividend declared by the insurance company, or on April 23, 1959, at the time the stock was disposed of by the defendants, or any other date shown by the evidence which you may find was the date of such conversion, if any. Of course, there could be only one conversion and one date of conversion."

The defendants contend that only one of the dates specified could possibly have been the date of the alleged conversion, viz., November 8, 1957, when the defendants had the stock registered in their names;

and they advert to two of our previous decisions in support of this contention. Larson v. Quanrud, Brink & Reibold, 78 N. D. 70, 47 N.W.2d 743, 29 A.L.R.2d 230, is cited as authority for their theory that if there was a conversion in this case, it would have to have occurred when the defendants presented the stock certificate of the plaintiff for cancellation and had new certificates issued in their own names. The facts of *Larson* are readily distinguishable from those in this case. In *Larson,* new certificates were issued in the names of persons other than the pledgee, clearly an act inconsistent with the rights of the pledgor; whereas in the case before us the new certificates were issued in the names of the defendants who, as pledgees, and according to the authorities discussed hereinafter, were entitled to effect the transfer as long as they did not relinquish possession of the stock. Lamoreaux v. Randall, 53 N.D. 697, 208 N.W. 104, 44 A.L.R. 1315, also relied upon by the defendants, is cited for the proposition that a conversion could not have occurred when the stocks were sold. *Lamoreaux* is also factually distinguishable from the instant case. In *Lamoreaux,* one Randall, a sheriff, seized certain shocked grain under a levy of execution against the plaintiff's wife. The plaintiff claimed title to three-fourths of the crop under a lease. Since the initial taking was inconsistent with the plaintiff's right to possession under the lease, the conversion existed as of that time, rather than when the grain was sold. In the present case, however, the transfer of the certificate into the defendants' names was entirely consistent with their rights under the pledge.

 The law of conversion is concerned with possession, not title. We have held that the essence of conversion is not the acquisition of property by the wrongdoer, but the wrongful deprivation of it to the owner. Frank v. Schaff (N.D.), 123 N.W.2d 827; Leach v. Kelsch (N.D.), 106 N.W.2d 358. Thus the fact that the defendants effected registration of the stock in their own names and thereby acquired apparent title does not dispose of this issue. It is conceded that the possession of the stock by the defendants was, in the first instance, rightful. So our inquiry must be directed toward a resolution of when this possession took on a tortious character.

 The pledgee of corporate stock may have such stock transferred into his name, consistent with his undertaking as pledgee, without being liable as a converter thereof. In 116 A.L.R. 579, the following statement appears:

"A pledgee having, according to the general rule, the right to cause a transfer of the stock to be made to his name on the corporate books, it follows, of course, that liability as for conversion cannot be imposed upon him for so doing. And various cases support the proposition that the transfer, on the application of a pledgee of corporate stock, of the stock on the corporate books and the issuance of a new certificate to him does not, generally, constitute a conversion of the stock by him."

We recognized this right in Second National Bank of Grand Forks v. First National Bank of St. Thomas, 8 N.D. 50, 76 N.W. 504. And in Moore v. Waterbury Tool Co., 124 Conn. 201, 199 A. 97, 116 A.L.R. 564, the Supreme Court of Errors of Connecticut observed, at 101:

"In the instant case the possession by the tool company of the stock was originally rightful. It was held by the tool company as security for the payment of the debt to it. It is a general rule that a pledgee of shares has a right to have the stock transferred on the books of the company and doing so does not constitute conversion. Skiff v. Stoddard, 63 Conn. 198, 217, 26 A. 874, 28 A. 104, 21 L.R.A. 102; First National Bank v. Hartford Life & Annuity Ins. Co., 45 Conn. 22, 34; Palmer v. O'Bannon Corporation, 253 Mass. 8, 149 N.E. 112, 113; Chase v. Boston, 193 Mass. 522, 79 N.E.

736, 737; Jones v. Seaman, 133 App.Div. 127, 117 N.Y.S. 288; 12 Fletcher, Cyclopedia of Corporations, § 5646. * * * The pledgee was entitled to the possession of the property until it was repaid. It was entitled to have the certificates transferred into its own name. The certificate at all times remained in its hands and subject to its control and could have been delivered to the pledgor upon payment of the loan. Under the circumstances, a mere assertion of title was not sufficient to constitute a conversion. Brown v. Leary, 100 App.Div. 421, 91 N.Y.S. 463, 464, appeal dismissed, 187 N.Y. 558, 559, 80 N.E. 1106.

"A nominal transfer of a pledge which does not put the property beyond the control of the pledgee does not amount to a conversion of the pledge. Day v. Holmes, 103 Mass. 306, 310; Ritchie v. Burke, C.C., 109 F. 16, 20; Davis v. Hardwick, 43 Tex.Civ.App. 71, 74, 94 S. W. 359; Hunter v. First National Bank, 172 Ind. 62, 66, 87 N.E. 734; Jones, Collateral Securities, 3d Ed., § 571b."

Since cancellation of the original certificate and the issuance of new certificates in the names of the defendants, under the authorities cited, are entirely consistent with the pledge, the jury was justified in inferring that a conversion did not occur on November 8, 1957.

■ Similarly, we do not see how a conversion could have occurred on December 9, 1957, the date on which the stock dividend was declared. The defendants were completely inactive in this matter, and something equivalent to affirmative action is necessary to support an action for conversion. Nye v. Johnson, 72 N.D. 95, 4 N. W.2d 819.

■ On the other hand, when the defendants transferred possession of the stock on April 23, 1959, a conversion took place. It is pointed out that the jury established the date of conversion as this date, since the damages assessed were based upon the value of the shares of stock in another company, admittedly worth $63,620.70, which were acquired by the defendants in exchange for the pledged stock. In view of this fact, we need not discuss the defendants' contention that the plaintiff failed to prove the value of the property on November 8, 1957. The record clearly demonstrates that, on April 23, 1959, the defendants exchanged the pledged stock for stock in another company worth $63,620.70.

■ Even if we were to assume that the trial court erred in permitting the jury to consider dates other than April 23, 1959, as the date of conversion, prejudicial error cannot be predicated upon this ground, inasmuch as the jury arrived at a verdict consonant with this date. Furthermore, the defendants tried this case on the theory that it was within the province of the jury to determine the date of conversion. This is shown by the instructions requested by the defendants. An appellant will not be heard to allege error in instructions given at his request by the trial court, and he is estopped to object that an instruction was not sufficiently specific, that it was not complete, or that it was misleading. Hoffer v. Burd, 78 N.D. 278, 49 N.W.2d 282.

■ Certain other assignments of error have been specified by the appellants, based upon rulings of the trial court in the admission of evidence and upon the court's instructions to the jury. It is not necessary to review these at length. Most of them have been disposed of or rendered immaterial by what we have said in this opinion. All of the specifications assigned as error have been carefully considered. No prejudice to the defendants could have resulted from any of the matters raised by such specifications. They are found to be without merit.

It follows that the order of the district court appealed from must be affirmed. It is affirmed.

PER CURIAM:

The foregoing opinion was prepared by the Honorable Thomas J. Burke, Chief Justice, before his death. It is adopted by the undersigned as the opinion of this court.

OBERT C. TEIGEN
Chief Justice
ALVIN C. STRUTZ
RALPH J. ERICKSTAD
Justices

KNUDSON, J., not being a member of this Court at the time of submission of this case, did not participate.

On Petition for Rehearing.

PER CURIAM,

The defendants and appellants have filed a petition for rehearing on the ground that the trial court committed reversible error by instructing the jury that the burden was on the defendants to prove affirmative defenses, when no affirmative defenses were, in fact, pleaded. In the opinion in this case, written by the late Judge Burke, we held that this instruction, though erroneous, was not prejudicial.

The basis for our determination that such instruction, though erroneous, was not prejudicial was that the trial court had instructed the jury:

"Your first duty after entering upon your deliberations of this case will be to decide, from all of the evidence in the case and these instructions, whether the transaction of December 21, 1956, was a loan, as claimed by the plaintiff, or a sale, as claimed by the defendants."

We must assume that the jury followed this instruction. Having done so, it first found the transaction between the parties to be a loan. The jury having found it to be a loan, the defendants could not have been prejudiced by that portion of the instruction which they now complain of.

Instructions to the jury must be considered in their entirety. Although the instruction complained of, standing alone, may be insufficient or even erroneous, it must be considered in connection with the entire instruction. If the whole charge, taken together, correctly advises the jury as to the law, the error is cured. Froh v. Hein, 76 N.D. 701, 39 N.W.2d 11; Ferderer v. Northern Pacific Ry., 77 N.D. 169, 42 N.W. 2d 216; Moe v. Kettwig (N.D.), 68 N.W.2d 853.

The petition for rehearing is denied.

TEIGEN, C. J., and STRUTZ and ERICKSTAD, JJ., concur.

KNUDSON and MURRAY, JJ., not being members of the Court at the time of submission of this case, did not participate.